UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **STANLEY T. ADAMS,** | : | **CASE NO. 1:05 CV 1886** |
| Petitioner, | : | |
| | : | **JUDGE DAVID A. KATZ** |
| vs. | : | |
| | : | |
| **NORMAN ROBINSON, Warden,** | : | |
| | : | **MEMORANDUM OF OPINION** |
| Respondent. | : | **AND ORDER** |

Before the Court is Respondent Warden Norman Robinson's ("Respondent") Motion for Summary Judgment. (ECF No. 110.) He requests that the Court dismiss Petitioner Stanley Adams' ("Petitioner" or "Adams") lethal injection claim, which the Sixth Circuit Court of Appeals remanded to this Court more than four years ago for limited factual development. Adams opposes the motion. (ECF No. 127.) Also before the Court is Adams' requests for judicial notice of a case currently pending in the District Court for the Southern District of Ohio and for further discovery relating to his lethal injection claim. (ECF No. 109.) Respondent opposes both requests. (ECF No. 126.) For the following reasons, Respondent's Motion for Summary Judgment and Adams' requests for judicial notice and continued discovery are denied.

**I.     Relevant Background**

Adams filed his Petition for Writ of Habeas Corpus on May 19, 2006, and an Amended Petition on June 7, 2006. (ECF Nos. 16 and 17, respectively.) Adams asserted numerous claims for relief in his petition, all of which this Court denied without granting a certificate of appealability ("COA") on April 24, 2007. (ECF No. 60.) On November 13,

2007, the Sixth Circuit granted Adams' application for a COA on two of Adams' claims, one of which was the constitutionality of Ohio's lethal injection protocol.  The court explained that it granted the COA because the United States Supreme Court had recently granted certiorari in a case concerning the constitutionality of lethal injection in Kentucky, *Baze v. Rees*, 533 U.S. 35 (2008).  (ECF No. 63, 3.)

The Supreme Court issued its decision in *Baze* a year later, "clarif[ying] the standards that should apply to the merits of Eighth Amendment protocol challenges," and addressing lethal injection in particular for the first time.  *Getsy v. Strickland*, 577 F.3d 309, 312 (6th Cir. 2009) (emphasis omitted).  The petitioners in *Baze* sought a declaratory judgment that Kentucky's three-drug lethal injection protocol, which was similar to Ohio's at the time, violated the Eighth Amendment's prohibition against cruel and unusual punishment.  They claimed that "there is a significant risk that the procedures will *not* be properly followed–in particular, that the sodium thiopental will not be properly administered to achieve its intended effect–resulting in severe pain when the other chemicals are administered."  *Id*. at 49 (emphasis original).  They conceded, however, that "if performed properly," the administration of the initial drug would eliminate any "meaningful" risk of pain, and the execution under the current protocol would be "humane and constitutional."  *Id*.

In a plurality opinion, a highly fractured Court recognized that the petitioners' claim fell within the scope of its Eighth Amendment jurisprudence.  It stated, "Our cases recognize that subjecting individuals to a risk of future harm–not simply actually inflicting pain–can qualify as cruel and unusual punishment."  *Id*.  The Court observed that the

Eighth Amendment prohibits the use of an execution procedure that is "*sure or very likely* to cause serious illness and needless suffering," creating an "objectively intolerable risk of harm." *Id*. at 50 (quotation marks and citations omitted) (emphasis original). It cautioned, however, that "the Constitution does not demand the avoidance of all risk of pain in carrying out executions," since "[s]ome risk of pain is inherent in any method of execution–no matter how humane–if only from the prospect of error in following the required procedure." *Id*. at 47. And it noted that it has in fact never invalidated a state's method of execution as the infliction of cruel and unusual punishment. *Id*. at 48.

The Court held in *Baze* that to prevail on a method-of-execution claim, a prisoner must establish that the state's lethal injection protocol creates a "demonstrated risk of severe pain" that is "substantial when compared to the known and available alternatives." *Id*. at 61. It concluded that Kentucky's lethal injection protocol did not meet that standard, primarily because of its safeguards. But the Court left open the door for further lethal injection challenges, noting that "[a] State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard." *Id*.

On July 23, 2008, three months after *Baze* was decided, the Sixth Circuit granted a COA on a lethal injection claim in another habeas case from this Court, *Jones v. Bradshaw*, Case No. 1:03 CV 1192. In an unpublished order, it explained,

> In light of the Supreme Court's recent decision in *Baze v. Rees,* . . . we believe that "reasonable jurists could debate whether . . . the issues presented were 'adequate to deserve encouragement to proceed further.'" . . . In *Baze*, despite the multitude of fractured opinions, seven Justices agreed that the case turned on the specific protocols that Kentucky used to ensure that the condemned was unconscious before the state administered the second and third drugs of the

3

> three-drug lethal cocktail. For instance, after discussing the safeguards that Kentucky uses, the Chief Justice's plurality opinion concluded that "[i]n light of these safeguards, we cannot say that the risks identified by petitioners are so substantial or imminent as to amount to an Eighth Amendment violation." . . . Similarly, Justice Stevens believed it to be an open question as to whether a different factual record might lead another state's method of lethal injection to be declared unconstitutional. . . . Justice Breyer concurred because he believed that Kentucky's safeguards were sufficient to prevent "'botched' executions." . . . Justices Ginsburg, with Justice Souter, dissented on the belief that Kentucky's safeguards were inadequate. . . . Thus, seven Justices adopted the view that a state could conceivably have protocols (or no protocols at all) that violate the Eighth Amendment.
>
> *Baze*, therefore, does not foreclose Jones's Eighth Amendment claim should he be able to demonstrate that Ohio's safeguards are different than Kentucky's in an unconstitutional manner. . . . Accordingly, by granting the COA we give counsel on both sides the opportunity to investigate the important question of whether Ohio's safeguards are materially different than Kentucky's.

*Jones v. Bradshaw*, Case No. 07-3766, Document 00611526536, at **3-4 (July 23, 2008)

(citations omitted).

The petitioner in that case, Odraye Jones ("Jones"), next filed a motion to remand with the Sixth Circuit, requesting, among other things, an opportunity to conduct factual development on the lethal injection issue. Respondent did not oppose a limited remand to the district court. On January 30, 2009, the Sixth Circuit ordered that the *Jones* case be remanded to the district court "for limited discovery and factual development of the lethal injection issue." *Jones*, Case No. 1:03 CV 1192, ECF No. 128.

Adams then moved the Sixth Circuit on February 6, 2009, to stay its appellate proceedings and remand his case as well "for limited discovery and fact development." (Case No. 07-3688, Doc. No. 00615360614, 13.) He described his request this way:

> The Supreme Court in *Baze v. Rees* did not find that lethal injection was unconstitutional, but the Court did recognize the implementation of the method of execution could implicate the Eighth Amendment prohibition against cruel and

4

unusual punishment. Therefore, an analysis of Ohio's lethal injection protocol under the rubric of the Eighth Amendment jurisprudence is valid. This Court should remand the case to the [district court] for limited discovery and fact development.

In his Reply Brief, he stated, "What is clear from even this rather cursory review is that there are significant issues and differences between Ohio's protocols and Kentucky's protocols that should give this Court serious concern. Further factual development is the only meaningful way to explore those differences and address these concerns." (Case No. 07-3688, Doc. No. 00615389260, 7.)

The Sixth Circuit granted Adams' motion to stay shortly thereafter and remanded the case to this Court "for factual development on lethal injection." (ECF No. 66.) On April 16, 2009, Respondent filed a motion with this Court to dismiss the lethal injection claims in both *Adams* and *Jones* on the ground that the claim is not cognizable in habeas. The Court denied the motions on September 8, 2009, holding that the authority upon which Respondent relied predated *Baze*, and that, because the Sixth Circuit remanded this matter for the limited purpose of "factual development," the Court had only limited jurisdiction and was therefore precluded from deciding the merits of the motion. (ECF Nos. 70 and 76, respectively.)

Respondent then moved to certify the ruling for interlocutory appeal and stay the proceedings. (ECF No. 78.) On March 4, 2010, this Court granted Adams' motion for interlocutory appeal regarding the effect of *Baze* on lethal injection claims, denied certification on its finding that it lacked jurisdiction to hear the merits of the motion, and granted the motion to stay the proceedings until the Sixth Circuit had ruled on whether it will hear Respondent's interlocutory appeal. (ECF No. 80.)

The Sixth Circuit granted Respondent's petition for leave to appeal this Court's ruling on the motion to dismiss on October 19, 2010, and issued its ruling on July 19, 2011.[1] The court affirmed this Court's denial of Respondent's motion to dismiss and held that Adams' method-of-execution challenge was cognizable on habeas. It again remanded the case to this Court "in accordance with this court's February 13, 2009 order." (ECF No. 85.) The Sixth Circuit denied Respondent's petition for rehearing on September 7, 2011. (ECF No. 86.)

On March 27, 2012, after conferring with counsel for both parties, the Court ordered Respondent to produce to Adams' habeas counsel all discovery materials it had produced, and copies of transcripts of all hearings conducted, in the § 1983 action in the United States District Court for the Southern District of Ohio, *Cooey v. Strickland*, Case No. 04 CV 1156 (now entitled *In Re: Ohio Execution Protocol Litigation*, Case No. 2:11 CV 1016 ("*In re OEPL*")), in which Adams and many other death row inmates are challenging Ohio's lethal injection protocol. The Court also ordered the parties to file necessary pleadings with the Court within one hundred and eighty days after discovery was complete. (ECF No. 94.) After having requested and received numerous extensions of time, the parties completed the ordered discovery and submitted briefs to the Court on April 12, 2013.

Adams filed a "Pleading Submitted pursuant to the Court's order of March 27,

---

[1] Respondent did not appeal the ruling in *Jones*. But Jones moved to stay the proceedings until the Sixth Circuit had ruled on whether it will hear the interlocutory appeal filed by Adams, and the Court granted the motion. (ECF No. 147.)

2012." (ECF No. 109.) In it, he requests that the Court take judicial notice of *In re OEPL*. (*Id*. at 15-18.) Adams also seeks to continue discovery, so that he may investigate the psychological impact of Ohio's deviations from, and changes to, its lethal injection protocol and the botched executions, and whether "not being sure how his death sentence will be carried out" constitutes cruel and unusual punishment. (*Id*. at 2.) Specifically, he wants:

> to determine the extent to which: (a) Mr. Adams's psychological, mental, physical, and emotional concerns can be attributed to the changing protocol, deviations from the established protocol, and botched executions; (b) these ailments are shared by other inmates; (c) [and] other inmates's [sic] concerns and ailments can be attributed to the changing protocol, deviations from the established protocol, and botched executions . . . .

(*Id*. at 17.) He offers the following "proposed avenues of discovery":

> 1. Retain an expert to devise a test that can identify those inmates who are experiencing physical and mental symptoms as a result of an uncertainty over the method by which lethal injection is practiced in Ohio and its frequent problems;
>
> 2. A mental health professional, such as a psychiatrist or psychologist to assess the fears of each inmate and the degree to which they are attributable to the uncertainty over how their death sentence will be carried out;
>
> 3. An experienced emergency room physician or phlebotomist to identify those inmates who have collapsed veins who may have a heightened fear of difficulties finding a vein because of prior intravenous drug use; and
>
> 4. Other means of identifying those characteristics of lethal injection in Ohio that affect the conditions of confinement that a period of discovery would reveal.

(*Id*. at 17-18.) Respondent objects that any further factual development is unnecessary to adjudicate Adams' lethal injection claim. (ECF No. 126.)

Respondent filed a Motion for Summary Judgment. (ECF No. 110.) He asserts that

7

he is entitled to judgment as a matter of law on the following grounds: Adams' claim is procedurally defaulted; this Court may not consider any factual development outside the state court record in adjudicating the merits of the claim; there is no clearly established United States Supreme Court precedent supporting his claim; Adams can only bring a general attack on lethal injection in habeas; and relief is precluded under *Baze* and *Cooey II v. Strickland,* 589 F.3d 210 (6th Cir. 2009), a Sixth Circuit case finding a claim that Ohio's lethal injection protocol is unconstitutional under *Baze* unlikely to succeed on its merits. (*Id*. at 1.) Adams opposes Respondent's motion, arguing that this Court lacks jurisdiction to rule on the motion. (ECF No. 127.)

**II. Analysis**

  **A. Respondent's Motion for Summary Judgment**

Respondent requests through his Motion for Summary Judgment that this Court dismiss Adams' lethal injection claim as a matter of law. As this Court explained in denying Respondent's Motion to Dismiss, it lacks jurisdiction to rule on a dispositive motion regarding a claim that currently is on appeal before the Sixth Circuit.

  The filing of a notice of appeal transfers jurisdiction of the merits of the appeal to the appellate court. *Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379 (1985). Although a district court retains jurisdiction over limited matters even after the notice is filed, such as questions regarding the physical custody of a criminal defendant, it may not adjudicate on issues that "affect the matters involved in the appeal itself." *Workman v. Tate*, 958 F.2d 164, 167 (6th Cir. 1992).

  Ruling on Adams' lethal injection claim would affect the merits of the appeal of an

issue upon which the Sixth Circuit has granted a certificate of appealability. The Sixth Circuit remanded this case for the limited purpose of "factual development on lethal injection" to assist it in its appellate review of Adams' lethal injection claim. (ECF No. 66.) The Court must act in accordance with that mandate as well as within the limited jurisdiction it retains over this matter. Respondent's Motion for Summary Judgment, therefore, is denied.

### B. Adams' Request for Judicial Notice

Adams makes two requests of the Court. First, he asks that the Court take judicial notice of *In re OEPL*. (ECF No. 109, 15.) The Court finds this unnecessary. Pursuant to this Court's Order of March 27, 2012, the State already has produced to Adams "all discovery materials it produced to the plaintiffs" in *In re OEPL* and transcripts of all hearings conducted in that case. (ECF No. 94.) Any further notice of, or reliance upon, the findings of the Southern District Court in that action is for the Sixth Circuit to determine in its resolution of Adams' claim.

### C. Adams' Request for Continued Discovery

Adams' second request is for further discovery. Habeas Corpus Rule 6(a) permits a judge, for good cause, to authorize a party to conduct discovery under the Federal Rules of Civil Procedure, and also to limit the extent of discovery. Hab. Corp. R. 6(a). The scope of discovery normally permitted under the federal civil rules is expansive. Rule 26(b) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the

>court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The Rules require the court, however, to limit otherwise permissible discovery in some circumstances. Rule 26(b)(2)(C) states, "On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added).

Bearing this standard in mind, the Court finds that the burden or expense of the proposed discovery outweighs the meager benefit that Adams' requested discovery would contribute to his claim under *Baze*–the purpose of the Sixth Circuit's remand for "limited factual development." Adams' request for continued discovery, therefore, must be denied.

As the Sixth Circuit explained in the related *Jones* case, it remanded the petitioner's lethal injection claim for factual development of "the important question of whether Ohio's safeguards are materially different than Kentucky's." Adams himself, in requesting the remand, stated that the purpose of the discovery was to explore "the significant issues and differences between Ohio's protocols and Kentucky's protocols that should give this Court serious concern." With this new discovery request, however, Adams' claim has morphed from focusing on the implementation and risk of *future* maladministration of lethal injection (the issue in *Baze)* to the "psychological, mental,

10

physical, and emotional" impact of Ohio's *past* deviations from, and changes to, its lethal injection protocol and its botched executions. This new claim is not the type of method-of-execution challenge addressed in *Baze,* and the discovery requested exceeds the scope of the Sixth Circuit's remand.

As Respondent points out, the Supreme Court has distinguished Eighth Amendment claims based upon maladministration from those based on the "psychological strain" of waiting for an execution. *Louisiana ex. rel. Francis v. Resweber*, 329 U.S. 459 (1947). The Court, in a plurality opinion upholding a second attempt of an execution after a mechanical malfunction had interfered with the first attempt, stated, "The cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment, not the necessary suffering involved in any method employed to extinguish life humanely." *Id*. at 464. Indeed, the Supreme Court cited *Resweber* in *Baze* for the proposition that "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" *Baze*, 553 U.S. at 50. Moreover, circuit courts consistently have rejected analogous so-called "Lackey claims," named for the death row inmate who argued that the psychological harm caused by lengthy delays in executions is cruel and unusual punishment under the Eighth Amendment. *See Shisinday v. Quarterman*, 511 F.3d 514, 526 (5th Cir. 2007); *Free v. Peters*, 50 F.3d 1362, 1362 (7th Cir. 1995) (per curiam); *Smith v. Mahoney*, 611 F.3d 978,

998 (9th Cir. 2010).[2]

Even if Adams' new formulation of his claim did fit within *Baze*, it is doubtful that the psychological harm he complains of would constitute the "severe pain" or "serious illness and needless suffering" referenced in *Baze* and other Eighth Amendment cases. *Baze*, 553 U.S. at 50, 61. Indeed, as the Court noted in *Baze,* it has never held that an inmate met the "heavy burden" of demonstrating that a state's execution protocol is "cruelly inhumane" in violation of the Constitution. *Id.* at 48, 53 (quoting *Gregg v. Georgia*, 428 U.S. 153, 175 (1976)). And circuit courts, including the Sixth Circuit, have nearly uniformly rejected challenges to state lethal injection protocols in applying *Baze*. *See Cooey II v. Strickland*, 589 F.3d 210, 216 (6th Cir. 2009) (holding that death row inmate had not demonstrated likelihood of success on merits of Eighth Amendment claim challenging Ohio's lethal injection protocol under *Baze* because, "[a]lthough Ohio's new protocol may not be perfect, it conforms with the Constitution's prohibition on cruel and unusual punishment, and the record indicates that it is a decided improvement on the protocol that Ohio has utilized in the past").[3]

---

[2] Although, as Adams points out, many of these courts note that the delays are caused at least in part by the inmates themselves; Adams' mental pain is not. *See Johns v. Bowersox,* 203 F.3d 538, 547 (8th Cir. 2000); *Jones v. Gibson,* 206 F.3d 946, 959 n.6 (10th Cir. 2000).

[3] *See also Jackson v. Danberg*, 594 F.3d 210, 224-29 (3d Cir. 2010) (execution by state's three-drug lethal injection not cruel and unusual because no evidence of substantial risk of serious harm); *Emmet v. Johnson,* 532 F.3d 291, 300 (4th Cir. 2008) (same); *Raby v. Livingston*, 600 F.3d 552, 557-61 (5th Cir. 2010) (execution by state's lethal injection protocols not cruel and unusual because state's safeguards sufficient and defendant failed to show risk of severe pain); *Nooner v. Norris*, 594 F.3d 592, 601-08 (8th Cir. 2010) (execution by state's three-drug

(continued...)

Here, the Court does not find that the slight value the proposed discovery may have in helping Adams meet the "heavy burden" of proving this claim outweighs its significant burden and expense. It is true that the issues at stake in this case, and all capital cases, are exceedingly important. *See, e.g., Garner v. Florida*, 430 U.S. 349, 357 (1977) ("[D]eath is a different kind of punishment from any other which may be imposed in this country."); *Strickland v. Washington*, 466 U.S. 668, 704 (1984) (Brennan, J., concurring in part and dissenting in part) ("[W]e have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding."); *Burger v. Kemp*, 483 U.S. 776, 785 (1987) ("Our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case."). But the interests in finality and wise judicial administration also are pressing. *See, e.g., McCleskey v. Zant*, 499 U.S. 467, 491 (1991) ("Neither innocence nor just punishment can be vindicated until the final judgment is known."); *Calderon v. Thompson,* 523 U.S. 538, 556 (1998) ("Only with an assurance of real finality can the State execute its moral judgment in a case. Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out."). Adams' discovery request, therefore, is denied.

**III. Conclusion**

---

[3](...continued)
lethal injection not cruel and unusual because no evidence of substantial risk of serious harm); *Cook v. Brewer*, 637 F.3d 1002, 1006 (9th Cir. 2011) (execution by lethal injection not cruel and unusual because petitioner's claim that sodium theopental would cause unconstitutional suffering was merely speculative); *DeYoung v. Owens,* 646 F.3d 1319, 1325-28 (11th Cir. 2011) (execution by state's three-drug lethal injection not cruel and unusual because execution did not proceed to second drug until inmate was fully unconscious).

Accordingly, the Court hereby denies Respondent's Motion for Summary Judgment. (ECF No. 110.) It also denies Petitioner's requests for judicial notice of *In re: Ohio Execution Protocol Litigation* and for further discovery. (ECF No. 109.) As the Sixth Circuit Court of Appeals' Order of February 13, 2009 is now satisfied, this case is hereby transferred to that court for further proceedings.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE